FILED

JUN 24 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM J. SOLANO, III,

        Petitioner,

v.

BRIAN BELLEQUE,

        Respondent.

Civil No. 06-1802-AC

FINDINGS AND RECOMMENDATION

HARRISON LATTO
1631 NE Broadway
No. 533
Portland, OR 97232

        Attorney for Petitioner

JOHN R. KROGER
Attorney General
JONATHAN W. DIEHL
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Oregon State Penitentiary, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On May 27, 1999, a Washington County grand jury indicted Petitioner on ten counts. Counts One and Two alleged Attempted Murder with a Firearm as to victims Max Metchan and Michael Medici. The remaining counts pertained to victim Kathleen McKee: Counts Three, Four, Five, and Six alleged kidnaping in the First Degree; Count Seven alleged Assault in the Second Degree; Count Eight alleged Sodomy in the First Degree; Count Nine alleged Burglary in the First Degree; and Count Ten alleged Unlawful Use of a Weapon.

All of the charges arose out of events which occurred over a three-day period in May 1999 between Petitioner and his former girlfriend, Kathleen McKee. Petitioner kept McKee captive, first at McKee's apartment and later at Petitioner's apartment. Petitioner threatened McKee with firearms, at one point tied her hands and ankles with plastic zip-ties, beat her with a belt, punched her, and kicked her. While holding her against her will, Petitioner forced McKee to call her former boyfriend, Michael Medici, and attempt to lure Medici and Max Metchan, a drug dealer who supplied McKee with methamphetamine, to Petitioner's apartment where he intended to shoot them. Medici and Metchan did not ever go to Petitioner's apartment. McKee escaped when police officers arrived at Petitioner's apartment in response to a request from McKee's sister for a welfare check on McKee. McKee suffered extensive bruising to her back, arms, forehead, and ear.

2 - FINDINGS AND RECOMMENDATION -

In December 1999, Petitioner was tried before a jury. The jury acquitted Petitioner of the crimes alleged in Counts One, Two, Eight, and Nine. The jury convicted Petitioner on the remaining charges.

On February 8, 2000, the trial judge sentenced Petitioner to a total of 90 months in prison on the four Kidnaping convictions and a consecutive, 70-month term on the Assault conviction. The judge imposed a concurrent, 60-month sentence on the Unlawful Use of a Weapon conviction.

Petitioner appealed. Appellate counsel submitted a *Balfour* brief.[1] Petitioner declined to draft a "Section B" for inclusion in the brief. The Oregon Court of Appeals affirmed without opinion. *State v. Solano*, 176 Or. App. 649, 32 P.3d 974 (2001). Petitioner did not seek review from the Oregon Supreme Court.

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Solano v. Czerniak*, 207 Or. App. 310, 141 P.3d 600, *rev. denied*, 341 Or .548, 145 P.3d 1109 (2006).

On December 15, 2006, Petitioner filed his habeas corpus action in this court. The Petition for Writ of Habeas Corpus alleges three grounds for relief:

> **Ground One:** Ineffective assistance of trial counsel in violation of the 6th and 14th Amendments to the United States Constitution.

---

[1] Upon concluding that only frivolous issues exist on direct appeal, a *Balfour* brief allows appointed counsel to meet the constitutional requirement of "active advocacy" without violating rules of professional conduct. Section A, signed by counsel, contains a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal, but contains no assignments of error argument. Section B, signed only the appellant, is a presentation of the issues that appellant seeks to raise but that counsel considers to be frivolous. *Balfour v. State of Oregon*, 311 Or. 434, 451-52, 814 P.2d 1069 (1991).

3 - FINDINGS AND RECOMMENDATION -

> **Supporting Facts:** Trial counsel (1) failed to file a motion in limine to exclude prejudicial testimony and evidence, (2) failed to properly prepare for trial when he did not obtain exculpatory discovery, failed to properly adequately develop evidence to support petitioner's version of facts, failed to adequately investigate matters that could have impeached witnesses [sic] and victims [sic] testimony, failed to interview relevant witnesses and obtain evidence that would support petitioner's defense and impeach witnesses against him, (3) failed to adequately make and preserve objections, to examine witnesses, to object to illegal character testimony and hearsay testimony, (4) failed to obtain necessary expert testimony, (5) failed to properly control defense witnesses, (6) failed to utilize necessary peremptory jury challenges, (7) failed to object to imposition of illegal sentence.
>
> **Ground Two:** Ineffective assistance of appellate counsel in violation of the 6th and 14th Amendments to the U.S. Constitution.
> **Supporting Facts:** Appellate counsel failed to appeal meritorious issues on appeal including *Apprendi* and *Blakely* issues.
>
> **Ground Three:** Denial of due process in violation of the 14th Amendment to the United States Constitution.
> **Supporting Facts:** Petitioner's sentence is in excess of that allowed by the decision announced in *Blakely v. Washington*.

In his Memorandum in Support of Section 2254 Petition, Petitioner addresses only his claims that counsel was ineffective for (1) failing to discover and present certain exculpatory evidence, and (2) failing to use a peremptory challenge to remove a prospective juror who had expressed reservations about whether he could be fair. Petitioner also raises an additional claim, not alleged in his Petition, that his due process rights were violated when he was convicted by a non-unanimous jury.

Respondent argues Petitioner is not entitled to relief on the merits of the two claims addressed in his Memorandum, and that Petitioner's attempt to argue the additional claim should not be allowed. As to the remaining claims, Respondent argues they should be denied as not traversed and that, in any event, they are all procedurally defaulted.

4 - FINDINGS AND RECOMMENDATION -

## DISCUSSION

### I.     Claims Not Addressed in Petitioner's Memorandum

Respondent argues Petitioner cannot obtain relief on the grounds for relief alleged in his Petition but upon which he submitted no argument in his Memorandum in Support on the basis that he waived those claims. Certainly, this court would prefer that appointed counsel address all claims alleged in the Petition in the Memorandum in Support. The court does not agree, however, that counsel's failure to do so automatically results in a waiver. District Judge Marsh of this court addressed this issue in *Elkins v. Belleque*, CV 06-1180-MA:

> Respondent relies upon 28 U.S.C. § 2248 which provides that the allegations of a return to a habeas petition, or an answer to an order to show cause, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."
>
> However, the Advisory Committee Notes to Rule 5 of the Rules Governing Section 2254 Proceedings, provides that a traverse is no longer contemplated "except under special circumstances", and that the common law assumption of verity of the allegations of a return until impeached, as codified in 28 U.S.C. § 2248, is no longer applicable." Advisory Committee Note to Rule 5, 28 foll. § 2254 (1976) (citing *Stewart v. Overholser*, 186 F.2d 339, 343 n. 5 (D.C.Cir. 1950)). In light of the foregoing, and in the absence of any case law supporting respondent's position that the failure to furnish legal argument in support of habeas claims renders the claims abandoned, I decline to find the claims not traversed to be waived or subject to denial on that basis alone."

Opinion and Order (#35) at 5-6.

The court finds Judge Marsh's reasoning persuasive and, consequently, rejects Respondent's assertion that Petitioner has waived the grounds for relief not specifically addressed in his Memorandum in Support. However, having undertaken a review of the those claims, the court concludes habeas corpus relief is not warranted because they are procedurally defaulted.

5 - FINDINGS AND RECOMMENDATION -

## II. Due Process Claim Raised in Memorandum

As noted, Petitioner argues a claim in his Memorandum in Support which was not alleged in the Petition for Writ of Habeas Corpus; he attempts to add a claim alleging his due process rights were violated when he was convicted by a non-unanimous jury.

A petition for writ of habeas corpus must "specify all the grounds for relief available to the petitioner" and state the facts supporting each ground." Rule 2(c), Fed. R. Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (2007). Claims not raised in the petition need not be considered by this court. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (traverse not proper pleading to raise additional grounds). As such, to the extent Petitioner seeks to amend his Petition to allege the due process claim argued in his Memorandum, the belated request is denied.[2]

## III. Relief on the Merits

### A. Legal Standards

When a petitioner has exhausted his federal claims, this Court may grant a writ of habeas corpus only if the state court proceeding: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court, and section 2254(d)(2) applies to purely factual questions resolved by the state court.

---

[2] In any event, the due process claim is subject to denial because the non-unanimous verdict did not violate any clearly established Supreme Court precedent. *See Apodaca v. Oregon*, 406 U.S. 404, 410-10 (1972) (holding Oregon's statutory system permitting jury convictions by 10 of 12 jurors constitutional).

*Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004), cert. denied, 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins*, 546 U.S. 333, 337-38 (2006). In conducting its review, the Court "look[s] to the last-reasoned state-court decision." *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003), cert. denied, 541 U.S. 1037 (2004).

Section 2254(d)(1) consists of two alternative tests, *i.e.*, the "contrary to" test and the "unreasonable application" test. *Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 413-414 (2000)), cert. denied, 540 U.S. 968 (2003).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (quoting *Clark*, 331 F.3d at 1067). Under the "'unreasonable application clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . . . [r]ather that application must be objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyer v. Andrade*, 538 U.S. 63 (2003)). When evaluating whether the state decision amounts to

7 - FINDINGS AND RECOMMENDATION -

an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law." *Cordova*, 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert*, 393 F.3d at 978; *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable"), *cert. denied*, 534 U.S. 1038 (2004). Section 2254(d)(2) "applies most readily to situations where a petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

In examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues . . . . [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert*, 393 F.3d at 972 (quoting *Taylor*, 366 F.3d at 1000). Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based

8 - FINDINGS AND RECOMMENDATION -

on extrinsic evidence, *i.e.*, evidence presented for the first time in federal court." *Taylor*, 366 F.2d at 1000.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. The Supreme Court's ruling in *Strickland v. Washington*, 466 U.S. 668 (1984) sets forth the "clearly established federal law" governing claims alleging ineffective assistance of counsel. *Williams*, 529 U.S. at 390. Under *Strickland,* to prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. 668, 687 (1984); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. There is a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* at 689. To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell*, 535 U.S. at 695; *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Williams*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694).

### B.     Analysis

#### 1.     Failure to Discover and Present Exculpatory Evidence

Petitioner argues trial counsel provided constitutionally ineffective assistance because he failed to discover and present at trial e-mails and letters from the victim to Petitioner which expressed love and affection, bank statements corroborating Petitioner's testimony that the victim's drug associates had robbed him, and airplane tickets that would have corroborated Petitioner's testimony that the victim returned from Salt Lake City to resume her relationship with Petitioner. Petitioner argues that, because the trial was essentially a "swearing contest" between the victim and Petitioner, this evidence would have been useful in rebutting the victim's story of fear, intimidation, and violence.

Petitioner alleged this claim in his PCR proceeding. There, the PCR trial judge entered the following pertinent findings of fact and conclusions of law:

FINDINGS OF FACT

\* \* \*

3. Trial counsel did thoroughly investigate this case and trial counsel did thoroughly prepare this case for trial. . . .

\* \* \*

6. Trial counsel did present evidence in support of petitioner's claim that the victim was stealing money from him. Kevin Bradley testified for petitioner that the victim had admitted to him that she was stealing money from petitioner. Bradley also testified that the victim had admitted she gave her ex-boyfriend petitioner's bankcard. Trial counsel presented an overwhelming amount of evidence in support of petitioner's claim that the victim was stealing money from his bank account.

7.  Trial counsel also presented evidence, through Kevin Bradley, that petitioner called the bank from Bradley's house regarding his concerns that the victim was stealing money from his bank account. Trial counsel also attempted to secure, through his investigator, evidence from a computer regarding e-mails from the victim to petitioner. The investigator could not secure this evidence. Petitioner's affidavit from his sister in this post-conviction proceeding regarding this issue does not add anything to petitioner's case. Trial counsel attempted to secure this evidence and could not do so. Petitioner has failed to prove that counsel could have been successful in retrieving this information and that the information would have had an affect on petitioner's case.

8.  Trial counsel investigated every aspect of petitioner's case and trial counsel presented all available evidence in support of petitioner's defense. There existed no additional exculpatory evidence that counsel could have presented on petitioner's behalf and petitioner has failed to prove his claim that counsel failed to adequately investigate his case and that counsel failed to present evidence in support of the defense case.

[9.]  Trial counsel did effectively cross-examine the victim and trial counsel lodged all necessary objections during trial. . . .

### CONCLUSIONS OF LAW

1.  Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

* * *

4.  Petitioner did not prove any of his claims by a preponderance of the evidence.

Resp. Exh. 123, pp. 7-10.

The PCR court's conclusion was not contrary to or an unreasonable application of *Strickland*. Petitioner did not show he was prejudiced by any error of trial counsel. As Respondent

11 - FINDINGS AND RECOMMENDATION -

notes, none of the evidence Petitioner claims should have been found and presented would have been admissible, because Oregon law does not permit impeachment of a witness with extrinsic evidence. Or. R. Evid. 608(2); *State v. Brown*, 297 Or. 404, 443, 687 P.2d 751 (1984). Moreover, even if the evidence had been admissible, Petitioner failed to establish a reasonable probability that the outcome of the trial would have been different. As such, the PCR court's decision is entitled to deference, and Petitioner cannot obtain habeas corpus relief on this claim.

### 2.  Failure to Exercise Peremptory Challenge to Remove Juror

Finally, Petitioner argues trial counsel provided constitutionally ineffective assistance when he failed to exercise a peremptory challenge against one of the jurors. During *voir dire*, trial counsel engaged in the following colloquy with potential juror Richard Fountain:

Q: What do you think about maybe being on this [jury]?

A. I was kind of looking forward to it, then when I heard what the charges were, I kind of was a little bit hesitant because maybe the way some things were with me when I was growing up, respect for women, that type of thing. I have some difficulty dealing with folks that don't feel the same way I do.

Q: Well, as I mentioned a time or two, what we're dealing with here are allegations that have been made.

A: I understand that.

Q: And there isn't any evidence before you now that my client did anything to any body.

A: That's true.

Q: And if there was information that came in that said this person suffered some injuries, maybe it wasn't my client that did it, you couldn't hold that against my client, could you?

A: No, sir.

12 - FINDINGS AND RECOMMENDATION -

* * *

Q: It makes sense that the feelings that you're expressing are the feelings that should be common, wouldn't you agree with that?

A: They should be, yes, to my way of thinking.

Q: Could you set aside what your personal experiences are enough to listen to what the evidence is and decide what happened? That's kind of the bottom line.

A: The bottom line is, I'm not sure if I could or not. Not only in growing up was that drilled into me, but my wife that I'm married to now went through some spousal abuse in her previous marriage and we kind of got in on the tail end of that, and, of course, you hear all the stories and/or witness to the thing and it makes it difficult. That's all I can say. I won't say that I couldn't be fair, but I'm a little bit swayed to one side already just hearing that.

Q: So you have some question in your mind whether or not you could be fair?

A: Uh-huh.

Transcript Designation -- Part A, pp. 81-83.

Counsel then deferrred to the trial judge, who further questioned Mr. Foreman:

Q: Mr. Fountain, at the end, I'm going to give you instructions and you must follow the law whether you agree with it or not. What I need to know is whether you can follow those instructions with, again, the idea that you're going to determine whether or not under the facts these things happened. And if you determine they didn't happen, are you going to have a problem? Are you biased such that you are still going to be biased in favor of a guilty verdict if you found these incidents did not happen?

A. No, I don't believe that would be the case.

Q: Thank you. Denied.

*Id.*, pp. 83-84.

The prosecutor declined to ask any follow-up questions. Petitioner's trial counsel continued:

13 - FINDINGS AND RECOMMENDATION -

Q:    I have a couple of follow-up questions. I want to address that issue to the Judge so we could clarify what the court's position would be on what you had said. I do have a couple other questions. I do thank you for you candor in laying that out. That's the kind of information we need to analyze what kind of juror you may well make in this case.

You've heard me talk earlier about the fact as we began the trial, my client is presumed to be innocent. Does that concept make sense to you?

A:    Yes, sir.

Q:    Why is that?

A:    Because there is not one of us that's a person in this world and whatever way you look at it and whether it's from a legal sense or not, if someone is making an accusation against something that you did or didn't do, that the facts need to be brought out before a decision is really made.

Q:    We also, in analyzing this case, the State is put to the burden of proof beyond a reasonable doubt and, again, the Judge is going to read you an instruction regarding what that is. But let me say that it isn't beyond all doubt, but you have to be reasonably certain in your own mind to a high degree that not only did something happen, but the person that's accused of doing it did it. That burden applies to each of the elements of the offense. Does it make sense that we would have a high burden -- in a criminal case -- a high burden of proof?

A:    Yes, I would think so. More so than maybe a lesser accusation.

Q:    We have another -- in other kinds of trials, civil trial, we have a different kind of burden than proof beyond a reasonable doubt. There is one test that's called a preponderance of the evidence which, basically, you're balancing the scales of 51 to 49 percent or better difference.

Also, another one which is clear and convincing evidence, that is much more likely than not. Higher than a preponderance but less than proof beyond a reasonable doubt. Proof beyond a reasonable doubt is the test only in criminal trials. Does that make sense to you?

14 - FINDINGS AND RECOMMENDATION -

> A:  I think in some regards what you mentioned are similar. But, yes, it does make sense.
>
> Q:  Does it make sense to you that the defendant doesn't have to testify if he doesn't want to in a criminal matter?
>
> A:  It makes sense to me.
>
> Q:  And if that would happen in this case and the Judge would so instruct, would you be able to put the fact that he didn't testify out of your mind and look at the evidence without considering that?
>
> A:  Yeah. Yes, I believe so. I think it's the defendant's right, if you will. If the facts speak for themselves, then it wouldn't be necessary that he would be the one presenting anything.

*Id.*, pp. 85-86. Counsel then passed the juror for cause and, as noted, did not exercise on of his remaining peremptory challenges.

The PCR trial judge rejected Petitioner's claim that trial counsel's failure to excuse this juror was constitutionally ineffective. The judge found:

> 9.  Trial counsel adequately and effectively represented petitioner during the jury selection process in this case. There is absolutely no evidence to support petitioner's claim that counsel committed error when he failed to excuse juror Fountain. Juror Fountain rendered Not Guilty verdicts on three separate charges within the indictment.

Resp. Exh. 123, p. 9.

In order to show ineffective assistance of counsel in the juror empaneling process, a petitioner must prove he was prejudiced by counsel's failure to challenge the juror. *Paradise v. Arave*, 954 F.2d 1483, 1491-92 (9th Cir. 1992), *vacated on other grounds by Arave v. Creech*, 507 U.S. 463 (1993). The relevant test for determining whether a juror is biased is "whether the juror[] . . . had such fixed opinions that [the juror] could not judge impartially the guilt of the defendant.

15 - FINDINGS AND RECOMMENDATION -

*Patton v. Young*, 467 U.S. 1025, 1035 (1984) (citing *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). A trial court's finding that a juror is impartial is a factual finding that is entitled to "special deference." *United States v. Quintero-Barraza*, 78 F.3d 1344, 1350 n.5 (9th Cir. 1995).

In the PCR proceeding, Petitioner did not demonstrate he was prejudiced by trial counsel's failure to challenge Juror Fountain. Indeed, as the PCR trial court noted, Fountain found Petitioner not guilty on the three most serious counts, the two counts of Attempted Murder and the count of Sodomy in the First Degree. Given Petitioner's failure to establish that Juror Fountain had such fixed opinions that he could not judge impartially Petitioner's guilt or innocence, the PCR court's decision was not contrary to or an unreasonable application of *Strickland*. Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

## RECOMMENDATION

For these reasons, the Petition for Writ of Habeas Corpus should be DENIED, and a judgment of DISMISSAL should be entered.

## SCHEDULING

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due July 7, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 23rd day of June, 2009.

*/s/ John V. Acosta*
John V. Acosta
United States Magistrate Judge